J-S04022-16

2016 PA Super 73

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMIE BROWN, | |
| Appellant | No. 152 WDA 2015 |

Appeal from the PCRA Order of December 22, 2014
In the Court of Common Pleas of Beaver County
Criminal Division at No(s): CP-04-CR-0000913-2001

BEFORE:  BOWES, OLSON and STRASSBURGER,* JJ.

OPINION BY OLSON, J.:                    **FILED MARCH 24, 2016**

Appellant, Jamie Brown, appeals *pro se* from the order entered on December 22, 2014 dismissing his third petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541-9546.   After careful consideration, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

This Court previously set forth the factual background of this case as follows:

> [On March 15, 2001] Aliquippa Police Officer James Naim was on routine foot patrol in the Linmar Housing Plan when Appellant approached him from the rear firing a nine millimeter handgun. Two bullets struck the officer in the head causing his immediate death. Testimony established that Appellant, who was well known to the law enforcement community, told several people that he was going to kill a police officer to "set an example."

---

* Retired Senior Judge assigned to the Superior Court

***Commonwealth v. Brown***, 83 A.2d 1063 (Pa. Super. 2013) (unpublished memorandum), at 1-2 (internal alterations and citation omitted).

The procedural history of this case is as follows. On May 10, 2002, Appellant was convicted of third-degree murder.[1] On May 29, 2002, Appellant was sentenced to 20 to 40 years' imprisonment. This Court affirmed the judgment of sentence, and our Supreme Court denied allowance of appeal. ***Commonwealth v. Brown***, 850 A.2d 5 (Pa. Super. 2004) (unpublished memorandum), *appeal denied*, 863 A.2d 1142 (Pa. 2004).

On June 30, 2005, Appellant filed a *pro se* PCRA petition. Counsel was appointed and, on February 13, 2008, the PCRA court denied Appellant's first PCRA petition. This Court affirmed the denial of PCRA relief, and our Supreme Court denied allowance of appeal. ***Commonwealth v. Brown***, 965 A.2d 289 (Pa. Super. 2008) (unpublished memorandum), *appeal denied*, 983 A.2d 725 (Pa. 2009).

Appellant thereafter sought federal habeas relief. Such relief was denied. ***Brown v. Mazurkiewicz***, 2012 WL 954628 (W.D. Pa. Mar. 20, 2012). On July 12, 2012, Appellant filed a *pro se* PCRA petition, his second. That petition was denied and this Court affirmed. ***Commonwealth v. Brown***, 83 A.2d 1063 (Pa. Super. 2013) (unpublished memorandum).

---

[1] 18 Pa.C.S.A. § 2502(c).

On June 7, 2013, Appellant filed his third *pro se* PCRA petition. Thereafter, Appellant filed an amended petition along with a motion to disqualify the Office of Attorney General ("OAG") and a motion seeking the PCRA court's recusal. On July 15, 2014, the PCRA court denied the motion to disqualify and the motion for recusal. On August 12, 2014, the PCRA court issued an amended notice of its intent to dismiss the petition without an evidentiary hearing. *See* Pa.R.Crim.P. 907. On December 22, 2014, the PCRA court dismissed the petition. This timely appeal followed.[2, 3]

Appellant presents five issues for our review:

1. Whether the [PCRA] court erred as a matter of law and/or abused its discretion in failing to disqualify the [OAG] from participating in the instant PCRA proceedings?

2. Whether the [PCRA] court erred as a matter of law and/or abused its discretion in failing to grant Appellant's request for judicial recusal?

3. Whether the [PCRA] court erred as a matter of law and/or abused its discretion in denying and/or otherwise dismissing Appellant's request for PCRA relief as untimely?

---

[2] On January 22, 2015, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). On February 13, 2015, Appellant filed his concise statement. On April 20, 2015, the PCRA court issued its Rule 1925(a) opinion. All issues raised on appeal were included in Appellant's concise statement.

[3] After the notice of appeal was filed, Appellant filed his brief eight days late. The Commonwealth thereafter sought dismissal of this appeal because of the untimely filing. The application to dismiss was referred to a motions panel of this Court, which denied the application on October 23, 2015.

4. Whether the [PCRA] court's historical findings concerning the information provided by [Angela Y.] White [("White")] and [Anthony] Brown [("Brown")] are without any support in the record?

5. Whether the [PCRA] court erred as a matter of law and/or abused its discretion in denying and/or otherwise dismissing Appellant's request for PCRA relief without ruling on his request for limited discovery?

Appellant's Brief at 4 (complete capitalization removed).[4]

In his first issue, Appellant argues that the PCRA court erred by denying his motion to disqualify the OAG.[5] Appellant contends that disqualification of the OAG was required because one of the claims raised in his PCRA petition was that the OAG withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Second, Appellant argues that disqualification of the OAG was required pursuant to the Commonwealth Attorneys Act, 71 P.S. § 732-101 *et seq.*

_____

[4] We have re-numbered the issues for ease of disposition.

[5] The Commonwealth contends that the order denying Appellant's motion for disqualification was a final order and Appellant's failure to file his appeal within 30 days of that order precludes jurisdiction over this issue. The order denying Appellant's motion, however, was not a final order under Pennsylvania Rule of Appellate Procedure 341 as it did not dispose of all of Appellant's claims. Furthermore, even if it were a collateral order, Appellant did not waive the issue by failing to file a notice of appeal within 30 days of entry of the order. This Court has held that "although collateral orders may be appealed within 30 days of their entry, the substance of the collateral order is not forever precluded when an appeal is not taken within this period." *Jones v. Faust*, 852 A.2d 1201, 1203 (Pa. Super. 2004), *citing **In re Estate of Petro***, 694 A.2d 627, 631 (Pa. Super. 1997). Thus, we have jurisdiction to reach the merits of this issue.

We review the PCRA court's denial of a motion for disqualification for an abuse of discretion. *Commonwealth v. Sims*, 799 A.2d 853, 856 (Pa. Super. 2002) (citations omitted). "A prosecution is barred when an actual conflict of interest affecting the prosecutor exists in the case; under such circumstances a defendant need not prove actual prejudice in order to require that the conflict be removed." *Commonwealth v. Ford*, 122 A.3d 414, 418 (Pa. Super. 2015) (internal quotation marks and citation omitted).

Appellant argues that the OAG should have been disqualified because, in his PCRA petition, he alleged that the OAG violated *Brady*. Appellant notes that any attorney who violates *Brady* is subject to disciplinary action and/or criminal penalties. Thus, according to Appellant, the OAG attorneys have a personal interest in ensuring his *Brady* claim fails which conflicts with their professional obligation to expose any *Brady* violations.

This claim fails for two reasons. First, when evaluating prosecutorial disqualification claims, "individual rather than vicarious disqualification is the general rule." *Ford*, 122 A.3d at 418 (internal quotation marks and citation omitted). The attorney in the OAG's office who represented the Commonwealth with respect to Appellant's third PCRA petition was not involved in Appellant's original prosecution. Appellant cites *Commonwealth v. Eskridge*, 604 A.2d 700 (Pa. 1992), in support of his argument that the general rule of individual disqualification should not apply in this case. *Eskridge*, however, is distinguishable from the case at bar. In

that case, the district attorney himself, not a deputy, had a conflict of interest. "[T]his Court held that where the conflict of interest lies with the chief prosecutor (*i.e.*, the District Attorney), the prosecution is barred and the conflict cannot be resolved by delegating the matter to an assistant DA." *Sims*, 799 A.2d at 857 (citations omitted). Thus, *Eskridge* established a special rule relating to conflicts involving chief prosecuting authorities. Appellant does not argue that Attorney General Kathleen Kane has any conflict of interest in this case. Therefore, Appellant's reliance on *Eskridge* is inapposite. Instead, the general rule of individual disqualification is appropriate in this case and Appellant does not explain how the attorney representing the Commonwealth with respect to his third PCRA petition had a conflict of interest.

Second, Appellant points to no authority for the proposition that allegations of a *Brady* violation warrant disqualification of an entire prosecutorial office. We are likewise unaware of any such authority. Instead, we find persuasive the reasoning of the Supreme Court of New Jersey in *New Jersey v. Marshall*, 690 A.2d 1 (N.J. 1997). In that case, like in the case at bar, the defendant argued that the attorney general's office should have been disqualified from representing the state in collateral proceedings because he alleged that an individual employed by the attorney general's office violated *Brady*. *Id.* at 99. The Supreme Court of New Jersey held that "[t]he fact that defendant alleges misconduct in prior

proceedings cannot entitle him to disqualify counsel for the State." ***Id.***
Thus, we conclude that the PCRA court did not abuse its discretion in declining to disqualify the OAG because of Appellant's ***Brady*** allegation.

Appellant argues, alternatively, that disqualification of the OAG is required pursuant to the Commonwealth Attorneys Act. Specifically, Appellant argues that there is no record showing that the Beaver County District Attorney asked the OAG to prosecute Appellant's PCRA petition; therefore, the OAG is without authority in this matter. This argument is waived. Under the PCRA, "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal[,] or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b). A defendant can challenge the OAG's prosecution of a case on grounds there was a violation of the Commonwealth Attorneys Act in his or her omnibus pretrial motion and on direct appeal. ***See Commonwealth v. Cosgrove***, 680 A.2d 823, 826 (Pa. 1996); ***see also Commonwealth v. Farmer***, 750 A.2d 925, 928 (Pa. Cmwlth. 2000), *appeal denied*, 795 A.2d 980 (Pa. 2000) (considering challenge to the OAG's prosecution on direct appeal); ***cf. Commonwealth v. Carsia***, 491 A.2d 237, 240 (Pa. Super. 1985) (*en banc*), *aff'd*, 517 A.2d 956 (Pa. 1986) (defendant has a right to challenge OAG's prosecution as it affects the validity of a criminal information). The OAG prosecuted Appellant at trial and represented the Commonwealth in Appellant's direct appeal. As Appellant could have raised

the issue at trial and on direct appeal but failed to do so, the issue is waived. Thus, the PCRA court did not abuse its discretion in declining to disqualify the OAG on this alternative ground.

In his second issue, Appellant contends that the PCRA court erred by denying his motion for recusal.[6] "We review the [PCRA] court's denial of the recusal motion for abuse of discretion." **Becker v. M.S. Reilly, Inc.**, 123 A.3d 776, 778 (Pa. Super. 2015) (citation omitted). When

> considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair[,] and competent.

**Commonwealth. v. Orie Melvin**, 103 A.3d 1, 23 (Pa. Super. 2014) (citation and internal ellipsis omitted).

---

[6] The Commonwealth contends that the order denying Appellant's motion for recusal was a final order and Appellant's failure to file his notice of appeal within 30 days of that order deprives us of jurisdiction over this issue. This Court has held, however, that a defendant's motion seeking recusal is not a final order (or a collateral order). **See Commonwealth v. Orie**, 33 A.3d 17, 19-20 (Pa. Super. 2011); Darlington *et al*, *Pennsylvania Appellate Practice* § 313:107.5 (2015 ed.); **see also Commonwealth v. Druce**, 848 A.2d 104, 107 (Pa. 2004) (deciding recusal issue in context of direct appeal taken from judgment of sentence entered more than 30 days after denial of recusal motion). Thus, the appeal from the order denying Appellant's recusal motion properly lies from the order dismissing his PCRA petition.

We are not persuaded by the merits of Appellant's recusal claim. First, "Appellant submits that [the PCRA court's] impartiality was demonstrated, in large part, by [its] rulings, which according to Appellant were almost invariably in favor of the prosecution. Adverse rulings alone do not, however, establish the requisite bias warranting recusal, especially where the rulings are legally proper." *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 90 (Pa. 1998). As noted above, this Court has repeatedly held that the PCRA court's rulings were correct, both during trial and during Appellant's two previous PCRA petitions. Thus, Appellant's argument that the PCRA court was biased because of its previous adverse rulings is without merit.

Appellant contends that the PCRA court's actions during trial also evidenced its bias in this matter. Appellant admits, however, that such actions are "not reflected in the trial record[.]" Appellant's Brief at 31. We must rely solely on the certified record; thus mere averments in a brief are insufficient to prove that the PCRA court's actions during trial were biased against Appellant. Appellant next contends that the PCRA court's opinion that 20 years' imprisonment was insufficient evidences the PCRA court's bias. This statement by the PCRA court was made at sentencing and reflected the trial court's careful consideration of the sentencing factors set forth in 42 Pa.C.S.A. § 9721(b). Such consideration is required by statute and case law. *See* 42 Pa.C.S.A. § 9721(b); *Commonwealth v. Fullin*, 892

A.2d 843, 847 (Pa. Super. 2006). This observation does not furnish the basis for a recusal claim.

Appellant also argues that the PCRA court had "personal knowledge of evidentiary facts which would likely be called into dispute[.]" Appellant's Brief at 27. Appellant, however, does not point to any such personal knowledge possessed by the PCRA court. As such, this contention is waived. *See* Pa.R.A.P. 2119(a); ***Burgoyne v. Pinecrest Cmty. Ass'n***, 924 A.2d 675, 680 (Pa. Super. 2007).

The PCRA court considered whether it was able to resolve Appellant's claims free of bias or personal interest in the case. After concluding that it was able to impartially resolve Appellant's third PCRA petition, the PCRA court determined that remaining on the case would neither present the appearance of impropriety nor undermine faith in the judiciary. Thus, it denied Appellant's motion for recusal. For the reasons stated above, we find that the PCRA court did not abuse its discretion in denying Appellant's recusal motion.

In his third and fourth issues on appeal, Appellant contends that the PCRA court erred by dismissing his petition based upon its finding that it lacked jurisdiction to reach the merits.[7] "Crucial to the determination of any

---

[7] Although not phrased as such, Appellant's fourth issue challenges the PCRA court's findings with respect to the timeliness of his third PCRA petition. As we exercise *de novo* review over the PCRA court's timeliness determination,
*(Footnote Continued Next Page)*

- 10 -

PCRA appeal is the timeliness of the underlying petition. Thus, we must first determine whether the instant PCRA petition was timely filed." **Commonwealth v. Smith**, 35 A.3d 766, 768 (Pa. Super. 2011), *appeal denied*, 53 A.3d 757 (Pa. 2012). The timeliness requirement for PCRA petitions "is mandatory and jurisdictional in nature, and the court may not ignore it in order to reach the merits of the petition." **Commonwealth v. Hernandez**, 79 A.3d 649, 651 (Pa. Super. 2013) (citation omitted). "The question of whether a petition is timely raises a question of law. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary." **Commonwealth v. Taylor**, 65 A.3d 462, 468 (Pa. Super. 2013) (citations omitted).

A PCRA petition is timely if it is "filed within one year of the date the judgment [of sentence] becomes final." 42 Pa.C.S.A. § 9545(b)(1). "[A] judgment [of sentence] becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3). Appellant's judgment of sentence became final on March 3, 2005, 90 days after our Supreme Court denied allowance of appeal. **See** U.S. Sup. Ct. R. 13 (petition for a writ of certiorari

_(Footnote Continued)_ ──────────────────

Appellant's fourth issue is addressed within the context of whether his third PCRA petition was timely.

must be filed within 90 days). Appellant's present petition, his third, was filed on June 7, 2013. Thus, the petition was patently untimely.

An untimely PCRA petition may be considered if one of the following three exceptions applies:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i-iii). If an exception applies, a PCRA petition may be considered if it is filed "within 60 days of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2).

Appellant argues that he satisfied the newly-discovered fact exception under section 9545(b)(1)(ii) and, therefore, the PCRA court possessed jurisdiction over the merits of his petition. We first note that the Commonwealth's brief and the PCRA court's opinion appear to conflate the newly-discovered fact exception with an after-discovered evidence claim. *Compare* 42 Pa.C.S.A. § 9545(b)(1)(ii) *with* 42 Pa.C.S.A. § 9543(a)(2)(vi); *see Commonwealth v. Brown*, 111 A.3d 171, 178 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1197 (Pa. 2015). It is possible for a petitioner to

plead and prove the newly-discovered fact exception, which gives the PCRA court jurisdiction and permits it to consider the petition on the merits, and then ultimately fail on the merits of an after-discovered evidence claim. The newly-discovered fact exception

> has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) the facts upon which the claim was predicated were unknown and 2) could not have been ascertained by the exercise of due diligence. If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.

*Commonwealth. v. Bennett*, 930 A.2d 1264, 1272 (Pa. 2007) (internal quotation marks and citations omitted; emphasis removed).[8]

Appellant contends that two separate affidavits provided newly-discovered facts.[9]

_____

[8] On the other hand:

> To obtain relief based on after-discovered evidence, [a petitioner] must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Pagan*, 950 A.2d 270, 292 (Pa. 2008) (citations omitted).

[9] On April 17, 2013, White signed one of the two affidavits at issue in this case. Within 60 days of receiving White's affidavit, Appellant located the transcripts from White's criminal trial and filed this, his third, PCRA petition. Thereafter, Appellant received Brown's affidavit. Within 60 days of receiving Brown's affidavit, Appellant filed his third amended PCRA petition. The Commonwealth then filed its response to Appellant's third amended PCRA

*(Footnote Continued Next Page)*

- 13 -

We first address Appellant's contention that Brown's affidavit,[10] dated August 17, 2013, and received by Appellant on or around September 9, 2013, constituted a newly-discovered fact. That affidavit reads as follows:

> Three [] days after the murder of Officer James Naim[,] I was at Patrick Mastanico[']s apartment along with [Aliquippa Police Officers] Sonya Carter, Tommy Lemon[,] and David Edgil . . . Tommy Lemon started [talking about] how he walked up behind [Officer] Naim and shot him in the back of his head and that when he went down he started kicking so he shot him again. And he was laughing about it. And started talking about how they (David Edgil [and] Tommy Lemon) [did] what they did because [] their jobs were on the line because [Officer] Naim was going to go and speak to some people about all the things going on in the Aliquippa Police Department. [T]hey were saying as to how they did it for all of their brother officers. And how they [planned] to put the blame on [Appellant] stating that [Appellant] told them that [there] was a hit list of cops because of a traffic stop they made on [Appellant] . . . Also how they could make people say what they wanted them to[] say. At that point[,] Tommy Lemon looked over at me[,] got up[,] walked over[,] patted me on my shoulder[,] and said anyone talks about this they are going away for a long time. Because he [realized] I was not a cop.

Appellant's Third Amended PCRA Petition, 9/24/13, at Exhibit B.

We conclude that Brown's affidavit does not constitute a newly-discovered fact. We find instructive our Supreme Court's decision in **Commonwealth v. Yarris**, 731 A.2d 581 (Pa. 1999). In **Yarris**, the

_____
_(Footnote Continued)_ —————————————

petition. Appellant responded by filing a reply to the Commonwealth's response. That reply was filed without leave of court.

[10] Although titled an affidavit, Brown's document is technically an unsworn declaration. **See** 18 Pa.C.S.A. § 4904. For simplicity, we refer to the document as an affidavit.

- 14 -

petitioner sought to invoke the newly-discovered fact exception to the PCRA's timeliness requirement. He relied upon an affidavit by an individual who said that she heard another individual, not the petitioner, confess to the murder for which the petitioner had been convicted. Our Supreme Court held

> that the evidence which purportedly reveals that someone other than [the petitioner] committed the murder is hearsay, not within any exception, and so unreliable as to be inadmissible. A claim which rests exclusively upon inadmissible hearsay is not of a type that would implicate the [newly-discovered fact] exception to the timeliness requirement, nor would such a claim, even if timely, entitle [the petitioner] to relief under the PCRA.

*Id.* at 592.

The alleged confession by Tommy Lemon is hearsay as it is an out-of-court statement offered for the truth of the matter asserted. *See* Pa.R.Evid. 801(c). Any argument that Tommy Lemon's confession was a statement against interest fails because "for this exception to apply, the declarant must be unavailable as a witness, *see* Pa.R.Evid. 804(b), and [A]ppellant offers no proof [Lemon] is not available. Therefore, [Brown's affidavit] was inadmissible hearsay and does not fall under [the newly-discovered fact] timeliness exception." *Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1270 (Pa. 2008).

Furthermore, Appellant failed to plead and prove that he acted with due diligence in obtaining Brown's affidavit. To the contrary, Appellant's strategy at trial included an effort to present evidence that another Aliquippa

police officer killed Officer Naim. **See** Appellant's Brief at 19; Trial Court Opinion, 10/18/02, at 6-8. Thus, according to Appellant, he had reason to believe prior to trial – over 13 years before the filing of the instant PCRA petition – that an Aliquippa police officer killed Officer Naim. He therefore had reason to investigate those officers to see if there was any evidence that would support his theory. Nowhere in Appellant's PCRA petition does he aver that he took action to investigate whether such evidence existed. Instead, he merely stated in a conclusory fashion that he could not have discovered the alleged confession until he received Brown's affidavit. Thus, even if Brown's affidavit were a newly-discovered fact, Appellant failed to file his PCRA petition within 60 days of when he could have discovered the fact with the exercise of due diligence.

We now turn to the affidavit from White, dated April 17, 2013, which Appellant argues provides information which led to the discovery of a newly-discovered fact. That affidavit reads as follows:

To Whom It May Concern:

I would like to inform you that there is a [wiretap] that indicates the person that killed the police officer [in the] Linmar [Housing Plan in] Aliquippa. I was asked about this when I was being interrogated on the [a]rmy [b]ase in Ft. Hood[,] Texas. I know that a [wiretap] do[es] exist that contains this information. The [t]ape has the voice of the killer that was bragging about what he did. I did not know anything about that misfortune at the time so I did not focus on what was being said to me. I just wanted to inform the courts that there is a tape that has the voice of a killer on it. I do not remember the names of the officers that shared bits of information with me about this case. Just want to help the courts find out the truth.

Appellant's Third Amended PCRA Petition, 9/24/13, at Exhibit A.

Appellant states that after receiving White's affidavit, he undertook a thorough investigation which included obtaining the transcripts from White's criminal trial in 2003 in the Court of Common Pleas of Beaver County. He avers that he read the transcripts of White's trial and learned that the wiretap conversations that she referenced in her 2013 affidavit contained exculpatory material. At the outset, we note that White's affidavit **itself** is not a newly-discovered fact. Our Supreme Court addressed a situation like the one in the case *sub judice* in **Commonwealth v. Castro**, 93 A.3d 818 (Pa. 2014). In **Castro**, the petitioner relied upon a newspaper article to establish the newly-discovered fact exception to the PCRA's timeliness requirement. Our Supreme Court held that a newspaper "article contain[ed] allegations that suggest such evidence may exist, but allegations in the media, whether true or false, are no more evidence than allegations in any other out-of-court situation." **Id.** at 825.

In this case, White's affidavit does not set forth who made the statements on the wiretaps nor does it set forth the name of the officers who played the wiretaps for White. The affidavit states that the wiretaps had the voice of a killer; however, it fails to aver that the voice heard on the wiretap was not Appellant's voice. Instead, the affidavit merely references exculpatory wiretaps that may exist. This is similar to **Castro** in which the newspaper article referenced a possible video tape that could be evidence.

*See id.* at 827. Thus, there is no fact within the affidavit, only information which could lead Appellant to discover facts.

We thus turn to whether Appellant pled and proved the existence of a newly-discovered fact **as a result** of White's affidavit. Appellant used White's affidavit to locate transcripts which referenced wiretaps played at White's trial. Appellant's Third Amended PCRA Petition, 9/24/13, at 9 (Subsequent investigation included "obtaining the complete transcripts from [] White's criminal trial."). Appellant did not attach to his third amended PCRA petition any transcript which included the actual conversations from the wiretap interception. Instead, he stated that the wiretap conversations "contain extensive dialogue between several individuals (both known and unknown to [Appellant]), as well as graphic, exculpatory discussion[s] concerning the March 15, 2001 shooting of Officer Naim." *Id.*[11]

---

[11] Appellant averred, in a supplement filed without leave of court, that at White's suppression hearing, the Commonwealth's attorney stated that the wiretap conversations included discussions regarding Officer Naim's murder. The Commonwealth counters that this averment was insufficient to plead and prove the existence of the wiretaps. This argument is disingenuous. The Commonwealth is fully aware now, as it was at the time of Appellant's trial, that the wiretap exists, that there were tapes of the wiretap and that there were transcripts of the wiretap tapes. Senior Deputy Attorney General Linda H. Barr represented the Commonwealth at White's trial as well as at Appellant's trial. *See, e.g.*, N.T., 4/29/02, at 2 (listing Linda H. Barr as appearing on behalf of the Commonwealth); Appellant's Reply to Commonwealth's Response to Third Amended PCRA Petition, 1/9/14, at Exhibit C.1 (copy of notes of testimony from White's trial listing Linda H. Barr as appearing on behalf of the Commonwealth).

In order to determine whether Appellant pled and proved the existence of a newly-discovered fact, we must first consider whether Appellant properly supplemented his third amended PCRA petition. As part of his third amended petition, Appellant sought permission to further amend and/or supplement his petition if necessary. Appellant's Third Amended PCRA Petition, 9/24/13, at 21. As noted above, after the Commonwealth filed its response, Appellant filed a reply to the Commonwealth's response. Contained within that reply was a supplement to his third amended PCRA petition. This reply/supplement was filed without leave of court.

Pennsylvania Rule of Criminal Procedure 902 provides, in relevant part, that the petitioner "shall attach to the petition any affidavits, records, documents, or other evidence which show the facts stated in support of the grounds for relief, or the petition shall state why they are not attached." Pa.R.Crim.P. 902(D). Furthermore, Pennsylvania Rule of Criminal Procedure 905 provides, in relevant part, that the PCRA court "may grant leave to amend or withdraw a petition for post-conviction collateral relief at any time. Amendment shall be freely allowed to achieve substantial justice." Pa.R.Crim.P. 905(A).

This Court has considered this issue before. In **Commonwealth v. Boyd**, 835 A.2d 812 (Pa. Super. 2003), the petitioner filed a supplement without leave of court. The PCRA court did not strike the supplement and considered the supplement when it addressed the petitioner's arguments.

This Court held that by failing to strike the supplement and addressing it when it ruled on the petition, the PCRA court implicitly permitted amendment under Rule 905(A).  *Id.* at 816.  Thus, when a petitioner files supplemental materials to a PCRA petition, and the PCRA court considers such materials, an attempt by the Commonwealth to preclude consideration of such materials fails.  *Id.*; *Commonwealth v. Dennis*, 950 A.2d 945, 959 n.11 (Pa. 2008).[12]

We conclude that the PCRA court accepted Appellant's reply/supplement.  The PCRA court did not strike the filing.  The PCRA court

---

[12] Our Supreme Court "has condemned the unauthorized filing of supplements and amendments to PCRA petitions, and held that claims raised in such supplements are subject to waiver."  *Commonwealth v. Reid*, 99 A.3d 470, 484 (Pa. 2014) (collecting cases).  In *Reid*, our Supreme Court found issues raised in supplements filed without leave of court to be waived.  *Id.*  The finding of waiver in *Reid*, however, is consistent with *Boyd* and *Dennis*.  Specifically, in *Reid* there is no evidence the PCRA court addressed the supplemental claims until four years after the notice of appeal was filed.  *Reid*, 99 A.3d at 483-484.  On the other hand, in *Boyd*, *Dennis*, and the case *sub judice* the PCRA court considered the supplemental materials prior to dismissing the petition.  *See Dennis*, 950 A.2d at 959 n.11; *Boyd*, 835 A.2d at 816; Rule 907 Notice, 7/15/14, at 1.

Our Supreme Court's decision in *Commonwealth v. Mason*, 2015 WL 9485173 (Pa. Dec. 29, 2015), is also distinguishable from the case at bar.  In *Mason*, our Supreme Court concluded that the PCRA court did not intend to allow supplementation, rather counsel's misrepresentations to the PCRA court resulted in such consideration.  *Id.* at *13.  Thus, it found that the claims raised in the petitioner's supplement were not implicitly accepted by the PCRA court.  *See id.*

Furthermore, in both *Reid* and *Mason* the issue was the addition of supplemental claims.  In this case, there were no claims added by Appellant's supplement.  Instead, Appellant only sought to supplement the record for claims that had been properly pled in the amended PCRA petition.

also considered the merits of Appellant's reply/supplement. In its Rule 907 notice, the PCRA court began by stating, "Upon review and consideration of [Appellant's t]hird *pro se* PCRA [p]etition, as well as his [a]mendment thereto, the Commonwealth's [m]emorandum in response to [Appellant's] third amended PCRA [p]etition, the [Appellant]'s [r]eply to the Commonwealth's [r]esponse . . ." Rule 907 Notice, 7/15/14, at 1. Thus, like in **Boyd**, we conclude that the PCRA court implicitly allowed Appellant to supplement his third amended PCRA petition with the January 9, 2014 filing. Therefore, we must consider not only Appellant's amended petition filed on September 24, 2013, but also the supplemental materials filed on January 9, 2014.

In those supplemental materials, Appellant attached transcripts from White's criminal proceedings. The first transcript is from White's January 11, 2003 suppression hearing. That transcript revealed that this Court authorized three wiretap orders, although the details of those orders are not clear from the January 11, 2003 transcript. The second transcript is from White's suppression hearing on February 24, 2003. In that transcript, the Commonwealth's attorney stated "There were conversations over that wiretap talking about the murder of Officer Naim[.]" Appellant's Reply to Commonwealth's Response to Third Amended PCRA Petition, 1/9/14, at Exhibit B.3. The third transcript is from White's jury trial held on March 6, 2003. That transcript includes an index listing 13 tapes of wiretap

communications entered into evidence at White's trial, along with the associated transcripts. *Id.* at Exhibit C.3. That transcript also contains summaries of two conversations intercepted by the wiretap which discuss Officer Naim's death. *Id.* at C.5.

Contrary to the Commonwealth's argument, the recordings may be admissible as statements against interest (or as non-hearsay). A statement against interest is a statement

> a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and [] is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Pa.R.Evid. 804(b)(2). Such a statement is admissible if the declarant is unavailable. *See* Pa.R.Evid. 804(a).

The Commonwealth contends that Appellant failed to plead and prove that the declarant was unavailable. In order for a declarant to be unavailable for the purposes of Rule 804, Appellant must plead and prove that the declarant "is absent from the trial or hearing and [Appellant] has not been able, by process or other reasonable means, to procure . . . the declarant's attendance or testimony[.]" Pa.R.Evid. 804(a)(5)(B). Appellant pled that he did not know the identity of individuals who made statements

on the wiretaps and, *ipso facto*, Appellant was unable to procure the declarant's testimony through reasonable means.

We find this situation distinguishable from *Yarris* and *Abu-Jamal*, discussed *supra*, and Appellant's claim relating to Brown's affidavit.[13]   In *Yarris* and *Abu-Jamal*, along with Appellant's claim relating to Brown's affidavit, the only proof of the alleged confessions was an affidavit by a third-party.  Compare that with Appellant's argument related to White's affidavit, which contained information that could lead to a recording of the communications regarding Officer Naim's murder.  A recording from a wiretap may be more trustworthy than an oral statement overheard by a third-party.  Without more context of the wiretap interceptions, it is impossible to determine if the statements contained in the wiretap were reliable under Rule 804(b)(2).  The conversations may have details which would indicate the statements regarding Officer Naim's murder are reliable. There is some support for this theory – and that comes from a statement made by the Commonwealth's attorney.  The Commonwealth's attorney noted that they arrested White and her co-conspirators after the wiretap conversations regarding Officer Naim's murder because things were getting too dangerous.  **See** Appellant's Reply to Commonwealth's Response to

---

[13] As discussed *infra*, the situation surrounding White's affidavit also differs from the situation regarding Brown's affidavit because there is a genuine issue of material fact related to whether Appellant acted with due diligence in discovering the existence of the wiretap transcripts while, for the reasons stated *supra*, there is no such dispute as it relates to Brown's affidavit.

Third Amended PCRA Petition, 1/9/14, at Exhibit B.3. Common sense dictates that the Commonwealth wouldn't take such action unless it believed that the conversations were reliable. Thus, we conclude that there is a genuine issue of material fact as to whether the wiretaps would be admissible evidence, and therefore could be used to satisfy the newly-discovered fact exception to the PCRA's timeliness requirement.

The Commonwealth contends that the wiretap tapes and transcripts are merely a new conduit to support Appellant's claim that another individual killed Officer Naim. *Cf. **Commonwealth v. Johnston***, 42 A.3d 1120, 1128 (Pa. Super. 2012) (a new conduit is not a newly-discovered fact for the purposes of the PCRA's timeliness exception). This argument fails, however, for two reasons. First, the wiretaps are not a new conduit because they are contemporaneous recordings, made prior to Appellant's trial. Thus, they are different than a new witness – appearing years after a judgment of sentence becomes final – providing an affidavit or testimony. Second, Appellant is not using the wiretaps as a new conduit to argue that another individual killed Officer Naim. Instead, Appellant is using the existence of the wiretap tapes and transcripts to support his claim that the Commonwealth violated ***Brady*** by withholding this evidence. Thus, the wiretap tapes and transcripts are not a new conduit. The averments in Appellant's third amended PCRA petition, combined with the transcripts attached to his January 9

supplement, are sufficient to raise a genuine issue of material fact as to whether he pled and proved the existence of a newly-discovered fact.

The Commonwealth next argues, in a conclusory fashion, that Appellant failed to plead and prove that he presented his claim within 60 days of when he could have discovered the existence of the wiretap tapes and transcripts with the exercise of due diligence. It is undisputed that Appellant filed his third PCRA petition within 60 days of receiving White's affidavit. Thus, the question is whether Appellant acted with due diligence in seeking out the tapes and transcripts. This Court has held "that due diligence requires neither perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief." **Commonwealth v. Burton**, 121 A.3d 1063, 1071 (Pa. Super. 2015) (*en banc*) (citations omitted).

After careful examination of applicable case law, we conclude that there is a genuine issue of material fact as to whether Appellant pled and proved that he acted with due diligence. In this case, it is unclear whether the wiretap tapes and transcripts are contained within White's public case file. In **Burton**, however, this Court held "that the presumption of access to information available in the public domain does not apply where the untimely PCRA petitioner is *pro se*." **Id.** at 1073. Thus, whether the wiretap

tapes and transcripts were located in White's public court record is not dispositive as to whether Appellant acted with due diligence.

We find instructive **Commonwealth v. Davis**, 86 A.3d 883, 888 (Pa. Super. 2014). In **Davis**, this Court concluded that the petitioner was not required to search for transcripts, in unrelated case files, to exercise due diligence when he did not know about the witness' deal with the Commonwealth. **Davis**, 86 A.3d at 890-891. In this case, White's case was unrelated to Appellant's case and there is no evidence that Appellant should have been searching White's case file for evidence related to his case.

We also find instructive **Commonwealth v. Medina**, 92 A.3d 1210 (Pa. Super. 2014) (*en banc*), *appeal granted*, 105 A.3d 658 (Pa. 2014). In **Medina**, this Court held that a witness' recantation was a newly-discovered fact and that Medina acted with due diligence in learning about the recantation. In so holding, the *en banc* Court relied on the fact that the petitioner was not at the scene of the crime and, thus, had no way of knowing whether the witness' trial testimony was truthful. **Id.** at 1217, *citing* **Commonwealth v. Loner**, 836 A.2d 125, 137 n.5 (Pa. Super. 2003) (*en banc* ). Furthermore, Medina was unaware of the police coercion that led to the witness' testimony. We find this analogous to the case at bar in which, according to the evidence of record and Appellant's averments, Appellant was not at the scene of the conversations recorded over the wiretap. Furthermore, there is no evidence of record that Appellant, or any

of his representatives, were present during White's questioning in Texas or during White's criminal trial in Pennsylvania. Accordingly, we conclude that there is a genuine issue of material fact as to whether Appellant pled and proved that he acted with due diligence in seeking out and finding the wiretap tapes and transcripts. Appellant is entitled to a hearing on this claim. *See* Pa.R.Crim.P. 907(1) and cmt. (authorizing summary dismissal only where, *inter alia*, there is no genuine issue as to any fact relating to a claim set forth in the petition).

The PCRA court, in dismissing Appellant's petition, found that the statements referred to by White in her affidavit, and referenced by Appellant in his third amended PCRA petition, were made by Appellant's co-defendant to police. Rule 907 Notice, 7/15/15, at 3. There is simply no evidence in the record to support this finding by the PCRA court. Evidence may exist which supports the PCRA court's finding; however, that evidence is not of record in this case. The Commonwealth failed to submit such evidence as part of its response to Appellant's third amended PCRA petition and the PCRA court did not hold a hearing to admit said evidence. Thus, the PCRA court's finding that the statement referenced in White's affidavit was Appellant's co-defendant's statement to police is unsupported by the record and cannot serve as the basis for dismissal of Appellant's third amended PCRA petition.

To be clear, we do not hold that Appellant has satisfied his burden of pleading and proving the applicability of the newly-discovered fact exception to the PCRA's timeliness requirement. Instead, we hold that Appellant's PCRA petition, along with the Commonwealth's response, and Appellant's reply, presents a genuine issue of material fact as to whether Appellant acted with due diligence in discovering the wiretap tapes and transcripts. If Appellant did act with due diligence, and the PCRA court concludes that the statements on the wiretap are admissible evidence, then Appellant has pled and proved the applicability of the newly-discovered fact exception to the PCRA's timeliness requirement. If Appellant has in fact pled and proved the applicability of the newly-discovered fact exception, the PCRA court possesses jurisdiction to consider the merits of Appellant's claims that relate to these newly-discovered facts.[14]

In his final issue, Appellant argues that the PCRA court erred by failing to rule on his request for limited discovery. We conclude that this issue is not ripe for disposition. If the PCRA court has jurisdiction over the merits of Appellant's petition, limited discovery may be appropriate. On the other hand, if the PCRA court lacks jurisdiction to consider the merits of Appellant's petition, limited discovery would be unnecessary. We leave it to

---

[14] Even if the PCRA court possesses jurisdiction over the claims arising from White's affidavit and the resulting wiretap tapes and transcripts, for the reasons set forth above, the PCRA court lacks jurisdiction over any claim arising from Brown's affidavit.

the PCRA court to determine if limited discovery is necessary after determining if it possesses jurisdiction over the merits of Appellant's third amended PCRA petition.

In sum, we conclude that the PCRA court did not abuse its discretion in denying Appellant's motion to disqualify the OAG and his motion for recusal. Appellant's petition was patently untimely; however, there is a genuine issue of material fact as to whether Appellant pled and proved the applicability of the PCRA's newly-discovered fact exception. We deem Appellant's last issue not ripe for disposition. Accordingly, we affirm the PCRA court's orders denying Appellant's motions for recusal and disqualification. We affirm the PCRA court's order that it lacks jurisdiction over any claim raised in Appellant's third amended PCRA petition relating to Brown's affidavit. We vacate the trial court's dismissal of the portions of Appellant's third amended PCRA petition that relate to the wiretap tapes and transcripts, and remand for appointment of counsel[15] and an evidentiary hearing to determine if Appellant has pled and proved the applicability of the newly-discovered fact exception.

---

[15] **See** Pa.R.Crim.P. 904(D) (emphasis added) ("On a second or subsequent petition, when an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, and an evidentiary hearing is required . . . , the judge **shall** appoint counsel to represent the defendant.").

Order affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judge Bowes joins this Opinion.

Judge Strassburger files a Concurring Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/24/2016